IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAWRENCE CHRISTOPHER REDDING,

        Plaintiff,

                                    CV 10-998-PK

v.                                    FINDINGS AND
                                    RECOMMENDATION

J. DHALIWAL, DAVIS, DE LA HERAS,
KISSEL, ZIMMERMAN, KEENE,
WESTMEYER, MORRIS, PAAPE,
JACQUEZ, GARDNER, BUZA, CIESLIK,
J. C. THOMAS, ALAN BOOTH, COLE,
and TOVAR,

        Defendants.

PAPAK, Magistrate Judge:

      Plaintiff Lawrence Christopher Redding, an incarcerated prisoner proceeding *pro se*, filed

this action *in forma pauperis* on August 20, 2010, identifying as defendants in the caption of his

complaint persons and entities identified as the United States Bureau of Prisons, Dr. J. Dhaliwal,

Dr. Davis, and Mr. De La Heras, but indicating in the body of his complaint his intention to

proceed against persons and entities identified as Mr. De La Heras, Dr. Dhaliwal, Dr. Davis, J. C.

Thomas, David Keene, Dr. Westinhimer, Mr. Jacquez, Sandy Gardner, Dr. Buza, United States

Bureau of Prisons, Dr. Paape, Alan Booth, Moore, and Cieslik.  As originally filed, Redding's

Page 1 - FINDINGS AND RECOMMENDATION

complaint identified the causes of action on which Redding intended to proceed as arising out of defendants' violation of his rights under the Eighth and First Amendments to the United States Constitution and 42 U.S.C. § 1997(d), and recited facts in support of those claims in a separately filed document entitled "Memorandum of Law, Points and Authorities."  On September 9, 2010, Redding moved for leave to amend his pleading to identify in the caption of his complaint those defendants named only in the body of the complaint and to add Debra Zimmerman as a defendant.  On December 15, 2010, I granted Redding's motion, effectively construed his original pleading, his Memorandum of Law, Points and Authorities, and his motion for leave to amend as collectively constituting Redding's amended complaint, and directed the clerk of court to caption the case in accordance with Redding's intention.  In addition, I dismissed Redding's claims to the extent alleged against the United States Bureau of Prisons.  In consequence, I directed the clerk to issue process as to defendants Dhaliwal, Davis, De La Heras, Kissel, Zimmerman, Keene, Westmeyer, Morris, Paape, Jacquez, Gardner, Buza, Cieslik, Thomas, Booth, Cole and Tovar only, and directed that the United States Marshal's Service serve those defendants with Reddings' summons, complaint, and Memorandum of Law, Points and Authorities.  Service was ultimately executed as to all defendants other than those identified as Buza, Cieslik, and Kissell, who could not be located under the names and contact information Redding provided.

Now before the court are defendant Gardner's motion (#57) to dismiss and to strike and, in the alternative, to make more definite and certain, and the motion (#66) to dismiss or, in the alternative, for summary judgment filed by defendants Dhaliwal, Davis, De La Heras, Zimmerman, Keene, Morris, Paape, Jacquez, Thomas, Booth, Cole, and Tovar (collectively, the

"federal defendants")[1].  I have considered the motions and all of the pleadings on file.  For the reasons set forth below, Gardner's motion to dismiss should be granted and her motion to strike and alternative motion to make more definite and certain should be denied as moot, and the federal defendants' motion should be granted in part and denied in part as discussed below.

## LEGAL STANDARDS

### I.      Motion to Dismiss for Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a).  Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

---

[1]  Defendant Westmeyer, a physician employed by the Bureau of Prisons, has been served with process in this action.  The federal defendants do not explain why he has made no appearance herein.

Page 3 - FINDINGS AND RECOMMENDATION

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007).  Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## II.   Motion for More Definite Statement

Federal Civil Procedure Rule 12(e) provides, in relevant part, as follows:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e).  Motions for more a definite statement are disfavored and are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal.1994).  Where a responsive pleading can reasonably be framed, a motion for more definite statement should be denied.  *See*, *e.g.*, *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also* Fed. R. Civ. P. 12(e).  Similarly, where the detail sought by a motion for more definite statement is available through discovery, the motion should be denied.  *See Beery v. Hitachi*

*Home Elecs. (Am.)*, 157 F.R.D. 477, 480 (C.D. Cal. 1993)

## III.    Motion to Strike

Federal Civil Procedure Rule 12 provides that the district courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on their own initiative or pursuant to a party's motion.  Fed. R. Civ. P. 12(f).  The disposition of a motion to strike is within the discretion of the district court.  *See Federal Sav. & Loan Ins. Corp. v. Gemini Management*, 921 F.2d 241, 244 (9th Cir. 1990).  Motions to strike are disfavored and infrequently granted.  *See Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wind Distribs. Pty., Ltd.*, 647 F.2d 200, 201, 201 n.1 (D.C. Cir. 1981); *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), abrogated on other grounds by *Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

## IV.    Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996).  In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence.  *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## MATERIAL FACTS

I.      **Redding's Allegations**[2]

In or around January 2007, Redding injured his back when he slipped and fell on a sheet of ice.  At or around that time, he was advised by two different neurologists that he would need back surgery to repair the injury he had suffered.  Following the accident, he was placed on "a series of pain managements," apparently including daily consumption of Percocet.

In February 2009, Redding was assaulted by fellow inmates at the Terre Haute Federal Correctional Institution, suffering injuries that exacerbated the pain symptoms caused by his back injury.  Shortly thereafter, Redding was prescribed a more powerful pain medication, Oxycodone, apparently both because his pain symptoms were more acute and because the Percocet had begun to aggravate Redding's pre-existing Hepatitis C symptoms.  Redding was apparently advised by the prescribing physician that he would continue to take Oxycodone until after he underwent back surgery.

In July 2009, apparently out of concern for Redding's safety were he to remain housed at the institution in Terre Haute, Redding was transferred to his current facility, the Sheridan Federal Correctional Institution.  At Sheridan, Redding explained to a physician's assistant (not a party to this action) that he needed back surgery, that he was still experiencing pain symptoms, that Oxycodone controlled his pain symptoms but that he was beginning to habituate to the prescribed dosage.  The physician's assistant advised Redding that he was unable to prescribe a

--------

[2]     Except where otherwise indicated, the following recitation constitutes the court's construal of the allegations contained in Redding's (constructive) pleading, assuming the truth of all allegations of fact.

higher dosage, and that Redding would need to consult with a physician if he wanted to change

his medication.  Redding attempted to see a physician on August 27, 2009, but was seen by

physician's assistant (and defendant) Cieslik instead.  She advised him that she, also, was unable

to prescribe medication.

On September 2, 2009, Redding filed an informal grievance regarding the refusal of

Sheridan medical staff to increase his Oxycodone dosage.  Defendant Booth, an Associate

Warden at Sheridan, assisted Redding in preparing the grievance.  Medical staff responded by

asserting that Redding was receiving an appropriate level of pain medication.  Redding

responded by filing a formal request for administrative remedy.  It appears that Redding has to

date received no response to his formal request, except that in late September 2009 the

administration requested additional time to process his request.  Shortly after Redding received

the request for additional time, a staff physician, defendant Dhaliwal, terminated Redding's

Oxycodone prescription without prior notice to Redding, prescribing Indomethacin in its stead.

Dhaliwal later told Redding that he does not like prescribing Oxycodone for extended periods of

time.

In October 2009, medical staff took Redding's wheelchair from him, apparently against

his preferences, on the grounds that he no longer needed it, and that he needed to strengthen his

back by walking before he could be scheduled to undergo back surgery.  It appears that Redding

subsequently fell down, further aggravating his injuries.  Defendant Morris, a shift lieutenant,

called the medical department three times and, having received no response, ultimately sent an

inmate to fetch a wheelchair to transport Redding back to sick bay.  Redding grieved the removal

of his wheelchair, first informally and then formally, without receiving any response.  Redding

Page 7 - FINDINGS AND RECOMMENDATION

also met with defendant Jacquez, Sheridan's Associate Warden, to request assistance, but Jacquez proved unhelpful.

In December 2009, Redding met with defendant Davis, a physician and the regional Clinical Director for Bureau of Prisons facilities. Redding requested a prescription for Oxycodone, but Davis refused, prescribing instead Gabapentin.

In January 2010, Dhaliwal directed Sheridan's food services division to begin preparing Redding's meals without any tomato or citrus products. Apparently the Cook Supervisor (not a party to this action) initially refused to prepare a meal for Redding according to Dhaliwal's specifications, with the result that Redding was forced to fast for approximately 24 hours. During the period of Redding's fast, Redding complained to physician's assistant Keene (a defendant in this action) about food services' failure to comply with Dhaliwal's directive, and Keene promised that the problem would be taken care of. Redding characterizes Keene's promise as "empty."

In February 2010, Redding informally grieved the failure to adhere to the directed dietary restrictions. In response, Redding was directed (by defendant Jacquez and by defendant Thomas, Sheridan's Warden) to apply to defendant Davis for assistance. It appears that Redding was unable thereafter to obtain an appointment to meet with Davis.

Redding met with defendant Paape, a staff psychologist, in February 2010. Redding requested an Oxycodone prescription, but was informed that Paape was not authorized to prescribe medication. Redding also met with defendant Gardner, a staff technologist, at around that same time. Gardner told Redding that he should be receiving pain medication, and told him she would send a note to the neurosurgeon to see if anything could be done, apparently without

result.

On more than one occasion between October 2009 and February 2010, Redding spoke with defendant Del La Heras, a Health Service Administrator at Sheridan, regarding his back pain and Hepatitis-related symptoms.  Redding alleges that De Las Heras provided him with shots of pain medication to relieve his pain symptoms.  On one of those occasions, defendant Zimmerman, a medical records supervisor, was present.  On that occasion, Redding was asked "in an intimidating fashion" to "sign off" on his wheelchair grievance.

In June 2010, Redding met with defendant Westmeyer, a Sheridan physician.  Redding asked for a renewed Oxycodone prescription, but Westmeyer refused the request, on the grounds that Redding did not need the medication.

At some unspecified time, Redding asked defendant Kissell, a Sheridan medical staff phlebotomist, for pain medication, but she replied that she was unable to do anything for him other than to draw blood for physician-prescribed tests.

Redding has not yet undergone back surgery, and continues to experience worsening pain symptoms. Redding alleges defendants' liability, in both their official and their individual capacities, for violation of his rights under the Eighth Amendment and under the First Amendment and 42 U.S.C. § 1997d.

## II.      Material Evidentiary Facts

The federal defendants and Redding have submitted evidence, apparently in connection with the federal defendants' alternative motion for summary judgment.  Such evidence will be considered in the light most favorable to Redding and will be discussed below where and as relevant to disposition of the federal defendants' alternative summary judgment motion, only.

Page 9 - FINDINGS AND RECOMMENDATION

## ANALYSIS

Plaintiff Redding alleges defendants' liability for the violation of his rights under the Eighth Amendment, the First Amendment, and 42 U.S.C. § 1997d. Redding's claim premised on the violation of his rights under the Eighth Amendment arises out of the purported failure of Sheridan medical staff to provide Redding with necessary medical care, specifically failure to prescribe the pain medications of Redding's choosing and failure to perform a specified surgical procedure on Redding's back. The Supreme Court has established that a public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must establish both (i) that he suffered an objectively serious illness or injury while incarcerated and (ii) that prison officials were subjectively aware of the seriousness of the condition and deliberately denied or delayed access to medical care that could reasonably have been provided. *See Clement v. Gomez*, 298 F.3d 898, 904-905 (9th Cir. 2002). The objective component is satisfied "whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 904 (internal quotation marks omitted), *citing McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *quoting Estelle*, 429 U.S. at 104)).

Analysis of Redding's (constructive) complaint strongly suggests that his claim premised on the violation of his rights under the First Amendment and under 42 U.S.C. § 1997d is intended as a claim of First Amendment *retaliation*, arising out of defendants' purported failure to take appropriate action on Redding's various formal and informal grievances filed in connection with Sheridan medical staff's purported failure to provide necessary medical care,

specifically his grievances filed in connection with the failure to prescribe the pain medication of

Redding's choosing, the removal of Redding's wheelchair, and the failure to comply with

Redding's prescribed dietary regimen.  The Ninth Circuit has opined that:

> Of fundamental import to prisoners are their First Amendment rights to file prison
> grievances. . . and to "pursue civil rights litigation in the courts.  Without those
> bedrock constitutional guarantees, inmates would be left with no viable
> mechanism to remedy prison injustices.  And because purely retaliatory actions
> taken against a prisoner for having exercised those rights necessarily undermine
> those protections, such actions violate the Constitution quite apart from any
> underlying misconduct they are designed to shield.

*Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citations, internal quotation marks and

modifications, and footnotes omitted).  "Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal."  *Id.* at 567-568 (footnote omitted),

*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), *Barnett v. Centoni*, 31 F.3d 813,

815-16 (9th Cir. 1994).

Although there is no express statutory cause of action available to private citizens

subjected to so-called "constitutional torts" by federal employees or others acting under the color

of federal law, the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971) recognized an implied cause of action for money

damages under the Fourth Amendment for an injury caused by a federal agent acting under color

of federal authority.  *See Bivens*, 403 U.S. at 389.  Since *Bivens*, the federal courts have

recognized similar implied causes of action in connection with a broad range of constitutional

Page 11 - FINDINGS AND RECOMMENDATION

torts, including the violation of an incarcerated prisoner's rights under the Eighth Amendment,
*see Carlson v. Green*, 446 U.S. 14, 20 (1980), and the violation of rights under the First
Amendment, *see Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986).

Redding expressly brings his claims under a *Bivens* theory of defendants' liability, and
seeks both injunctive relief (requiring Sheridan medical staff to schedule the back surgery
Redding believes his condition requires and to provide Redding with a prescription for 20 mg
doses of Oxycodone twice daily both before his surgery and afterwards, until Redding is pain-
free, enjoining defendants from transferring Redding to any different facility until after he
recovers from the requested surgery, and requiring Sheridan staff to retain all viderecordings in
their possession showing the hardship, pain, and suffering that Redding has experienced while
housed at Sheridan) and money damages from the defendants in both their official and their
individual capacities.  However, because suits against federal officials in their official capacity
are viewed in essence as suits against the federal government, and are therefore barred by the
doctrine of sovereign immunity, "no *Bivens*-like cause of action is available against . . . federal
agents sued in their official capacities."  *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257
(9th Cir. 2008), *citing FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994), *Nurse v. United States*, 226
F.3d 996, 1004 (9th Cir. 2000).  Thus, to the extent Redding's claims are properly cognizable as
brought under *Bivens*, they should be construed as brought against the defendants in their
individual capacity only.

All named defendants who have been served with Redding's complaint have moved to
dismiss Redding's claims against them, as discussed below.

## I.        Defendant Gardner's Motion

According to Redding's allegations, defendant Gardner is a medical "technologist" employed by the Willamette Valley Medical Center in McMinnville, Oregon.  Other than the foregoing, Redding's only allegations that expressly implicate Gardner are as follows:

> After I got the results of my M.R.I. I asked Ms. Gardner is there anyway I could get some one to give me some pain medication?  She said[] []that she saw my spine and that it was wrong for me not to be getting any pain medication and she would send a note to the n[eu]ro surgeon to see if something could be did for me. But nothing ever happen!

Apparently in consequence, Gardner takes the position (without analysis) that Redding intends to allege Gardner's liability in connection with the alleged violation of his Eighth Amendment rights only, and not to allege Gardner's liability also in connection with his First Amendment retaliation claim.  Gardner moves to dismiss Redding's Eighth Amendment claim against her for failure to state a claim, and to strike from Redding's complaint "[t]he identifier of W.V.M.C. after [her] name."  In the alternative to her motion to dismiss, Gardner moves that Redding's claims against her be made more definite and certain, specifically to state allegations regarding whether Gardner acted under color of state law and regarding whether she was deliberately indifferent to any significant medical need Redding may have experienced.  Although Redding has filed a brief in opposition to the defendants' motions to dismiss, his brief addresses only the federal defendants' motion, and contains no argument in opposition to Gardner's motion.

### A.        Defendant Gardner's Motion to Dismiss

#### 1.        Gardner's Motion to Dismiss Redding's Eighth Amendment Claim Against Her

In support of her motion, Gardner characterizes Redding's Eighth Amendment claim as

arising under 42 U.S.C. § 1983, and asserts that the claim must fail because Redding failed to

allege that Gardner acted under color of state law, a requisite element of a claim under Section

1983.  However, Gardner's argument attacks a straw man:  Redding does not purport to bring his

claim under Section 1983, but rather as a *Bivens*-type action.

Gardner is not, and is not alleged to be, a federal employee.  Nevertheless, under the

constitutional-tort jurisprudence of the United States Supreme Court and of the Ninth Circuit, it

is clear that a medical-care provider providing medical services to a federal inmate does so under

color of federal authority even where the provider is not a federal employee.  In *West v. Atkins*,

487 U.S. 42 (1988), the Supreme Court considered the case of an incarcerated prisoner seeking to

establish the liability under Section 1983 of a private physician employed under contract with the

state of North Carolina to provide orthopedic services at a state-run correctional facility for

violating the prisoner's Eighth Amendment right to adequate medical care.  The court concluded

that, although the physician was not an employee of the state and did not hold himself out as

such, the physician nevertheless necessarily acted under color of state law when he provided

medical treatment to a state prisoner.  *See West*, 487 U.S. at 55.  The court specifically reasoned

as follows:

> It is only those physicians authorized by the State to whom the inmate may turn.
> Under state law, the only medical care [the incarcerated plaintiff] could receive
> for his injury was that provided by the State.  If [the physician] misused his power
> by demonstrating deliberate indifference to [the plaintiff]'s serious medical needs,
> the resultant deprivation was caused, in the sense relevant for state-action inquiry,
> by the State's exercise of its right to punish [the plaintiff] by incarceration and to
> deny him a venue independent of the State to obtain needed medical care.

*Id.*

In *Pollard v. GEO Group, Inc.*, 629 F.3d 843 (9th Cir. 2010), the Ninth Circuit was

presented with analogous circumstances, but in the *Bivens* context.  The *Pollard* plaintiff was

incarcerated in a privately operated federal correctional institution, and brought a *Bivens* action

premised on the violation of his Eighth Amendment rights against, *inter alia*, a private physician

under contract with the private operator to provide medical care to institutional inmates.  The

*Pollard* court found:

> no principled basis to distinguish the activities of the [private physician] in
> [*Pollard*] from the governmental action identified in *West*.  [The *Pollard* plaintiff]
> could seek medical care only from the [private operator's] employees and any
> other private physicians [the operator] employed.  If those employees
> demonstrated deliberate indifference to [the plaintiff]'s serious medical needs, the
> resulting deprivation was caused, in the sense relevant for the federal-action
> inquiry, by the federal government's exercise of its power to punish [the plaintiff]
> by incarceration and to deny him a venue independent of the federal government
> to obtain needed medical care.

*Pollard*, 629 F.3d at 856.  Similarly, here, Redding had the opportunity to seek medical care only

as permitted by Sheridan officals.  In consequence, in the course of providing medical care to

Redding during the period of his incarceration, any care provider necessarily acted under color of

federal authority, without regard to whether the provider was affirmatively employed or funded

by any federal agency.  Because Redding has alleged that Gardner provided him with medical

care at a time when Redding was incarcerated in a federal correctional institution, his *Bivens*

claim against Gardner is not defective for failure to expressly allege that Gardner acted under

color of federal law.  I turn, therefore, to the merits of Redding's Eighth Amendment claim.

 As noted above, to establish violation of rights under the Eighth Amendment on a theory

of deliberate indifference, an incarcerated prisoner must establish that prison officials were

subjectively aware of the prisoner's objectively serious medical condition and deliberately denied

or delayed the provision of reasonably available medical care that would have remedied or

ameliorated the condition.  Here, Redding does not allege that Gardner played any causal role in

withholding or delaying his medical treatment.  To the contrary, he alleges only that Gardner

promised to write a note to bring Redding's pain medication preferences to the attention of

Redding's neurosurgeon, and that Redding did not subsequently receive a prescription for the

pain medication of his choice.  A fair reading of Redding's allegations is that, far from displaying

deliberate indifference to Redding's medical needs, Gardner was moved to help Redding, albeit

ultimately ineffectively.  And while Redding's allegations do not exclude the possibility that,

despite her promise, Gardner never intended to write a note on Redding's behalf, in the absence

of a clear statement to that effect such an alternative construal of Redding's allegations would

necessarily be no more than speculative.  Because Redding's allegations do not raise Redding's

right to relief above the speculative level, his Eighth Amendment claim against Gardner should

be dismissed.[3]

## 2.    Redding's First Amendment Retaliation Claim Against Gardner

As noted above, Gardner takes the position that Redding has not alleged and does not

intend to allege his First Amendment retaliation claim against her.  Although I do not assume the

truth of Gardner's position, I agree with Gardner that Redding makes no allegation from which a

finder of fact could reasonably conclude that Gardner could have been involved in any way with

the Sheridan grievance process generally or with prison officials' purported failure to take

appropriate action on Redding's various grievances in particular, or that Gardner otherwise took

any action calculated to chill Redding's exercise of his rights under the First Amendment.  In

---

[3]  In light of my recommendation that Gardner's motion to dismiss be granted, the court
need not reach Gardner's theories that Redding's claim should also be dismissed on the grounds
that it is time-barred and on grounds of insufficient service of process.

consequence, to the extent Redding's First Amendment retaliation claim may be alleged against Gardner, that claim should be dismissed.

**B.    Defendant Gardner's Alternative Motion to Make More Definite and Certain**

In light of my recommendation that Gardner's motion to dismiss be granted and that Redding's claims be dismissed to the extent alleged against Gardner, the court need not consider Gardner's alternative motion that Redding's complaint be made more definite and certain. However, for the reasons set forth above, in the event that my recommendation regarding Gardner's motion to dismiss is not adopted by the reviewing Article III judge, Gardner's alternative motion to make more definite and certain should be granted in part, and Redding should be ordered to amend his complaint to clarify the manner in which Gardner's conduct violated Redding's rights under the Eighth Amendment and, if applicable, under the First Amendment and 42 U.S.C. § 1997d.

**C.    Defendant Gardner's Motion to Strike**

In light of my recommendation that Gardner's motion to dismiss be granted and that Redding's claims be dismissed to the extent alleged against Gardner, Gardner's motion to strike should be denied as moot.  However, in the event that my recommendation regarding Gardner's motion to dismiss is not adopted by the reviewing Article III judge, Gardner's motion to strike should be denied on its merits.  Gardner moves to strike "[t]he identifier of W.M.V.C. after . . . Gardner's name" in Redding's pleading.  Gardner does not establish that the so-called "identifier" is in any way redundant, immaterial, impertinent, or scandalous, and therefore does not establish any basis for striking the complained-of language.  The abbreviation "W.V.M.C." evidently stands for the Willamette Valley Medical Center, Gardner's employer; that entity is not a

Page 17 - FINDINGS AND RECOMMENDATION

defendant in this action, and there appears to be no risk of confusion in that regard.

## II.    Federal Defendants' Motion

The federal defendants style their motion as a motion to dismiss or, in the alternative, a motion for summary judgment. In support of their motion, the federal defendants offer a memorandum of points and authorities, the preamble of which indicates that, by and through their motion, these defendants:

> move for summary judgment pursuant to Fed. R. Civ. P. 12(1) & (6) on the grounds that the Amended Complaint. . . fails to state a claim against [the federal defendants], the Court lacks jurisdiction as to the [federal] defendants, that Defendant Keene is entitled to absolute immunity, and all other federal defendants are entitled to qualified immunity from suit.

I note that, despite the foregoing, Rule 12 provides no authority for a party to move for summary judgment, but rather provides authority only for filing motions to dismiss. In their supporting memorandum, the federal defendants make no further express reference to summary judgment, and indeed, refer on more than one occasion to the legal standard governing motions to dismiss (including in connection with non-jurisdictional arguments premised on the federal defendants' evidentiary submissions), and conclude at the close of their memorandum (only) that Redding's complaint "should be dismissed." Nevertheless, in connection with several (but not all) of their supporting arguments, including arguments addressing the question whether Redding's complaint states a claim against these defendants, the federal defendants expressly rely on evidence offered in support of their motion. I note that in considering a motion to dismiss for failure to state a claim, the court is without authority to consider such evidence, but rather must confine its inquiry to the plaintiff's allegations as set forth in the plaintiff's pleadings, and to matters fit for judicial notice. In the following discussion I shall address, in turn, those of the federal defendants'

Page 18 - FINDINGS AND RECOMMENDATION

arguments that may appropriately be considered in support of their motion to dismiss, and then those arguments that should properly be considered in connection with their alternative motion for summary judgment.

### A.    The Federal Defendants' Motion to Dismiss for Failure to State a Claim

The federal defendants' first argument in favor of their motion to dismiss depends necessarily on the premise that Redding seeks only injunctive relief, and not money damages, from the federal defendants.  On that basis, the federal defendants argue that all claims against them must be dismissed, on the grounds that the actions that the defendants would be required to perform if Redding's request for injunctive relief were granted are actions that they may only perform in their official rather than individual capacities.  As noted above, however, the premise of the federal defendants' argument is flatly inaccurate:  Redding seeks both injunctive relief and money damages from the federal defendants.  To the extent Redding seeks money damages from the federal defendants, his claims are clearly outside the scope of the federal defendants' argument.

As to the question whether the court could grant the injunctive relief Redding requests against federal officials in their individual capacities, I acknowledge the incongruity the federal defendants identify, namely, the tension between naming federal officials as defendants in their individual capacities and seeking an injunction requiring them to take action that they may only perform *qua* federal officials.  I further acknowledge that injunctive relief is relatively infrequently at issue in *Bivens* actions, and that such actions are frequently described as actions for money damages.  However, Supreme Court jurisprudence establishes that injunctive and other equitable remedies may nevertheless sometimes be available in connection with claims

Page 19 - FINDINGS AND RECOMMENDATION

brought under *Bivens*:  in *Farmer v. Brennan*, 511 U.S. 825 (1994), for example, the court

considered a *Bivens* action brought by an incarcerated prisoner complaining that the conditions of

his incarceration violated his rights under the Eighth Amendment, and seeking both money

damages and injunctive relief.  In connection with the plaintiff's request for injunctive relief, the

*Farmer* court expressly held that where a "court finds the Eighth Amendment's subjective and

objective requirements satisfied, it may grant appropriate injunctive relief." *Farmer*, 511 U.S. at

846.  Moreover, it has for long been the "established practice of th[e] [Supreme] Court to sustain

the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the

Constitution. . . ." *Bell v. Hood*, 327 U.S. 678, 684 (1946).  The Supreme Court has observed

that "where federally protected rights have been invaded, it has been the rule from the beginning

that courts will be alert to adjust their remedies so as to grant the necessary relief." *Id*.  It thus

may be possible to resolve the tension referenced above by construing Redding's claims as

properly brought against the defendants in their individual capacities under *Bivens* to the extent

brought for the purpose of securing an award of money damages, and as properly brought against

the defendants in their official capacities under the court's inherent power to enjoin constitutional

violations to the extent brought for the purpose of enjoining ongoing constitutional violations.  In

any event, because the governing jurisprudence establishes that injunctive relief is potentially

available to *Bivens* plaintiffs under at least some circumstances, and because the federal

defendants have not established that such relief is unavailable here, the federal defendants'

motion to dismiss should be denied to the extent premised on the theory that Redding may not

seek injunctive relief from any of the federal defendants.

The federal defendants next argue that Redding's claims against defendants Cole, Tovar,

Page 20 - FINDINGS AND RECOMMENDATION

Paape, and Morris should be dismissed on the grounds that Redding does not allege that any of these four defendants played a role in the alleged violation of Redding's constitutional rights. First, the federal defendants correctly observe that Redding makes no allegations whatsoever concerning defendants Cole or Tovar, and on that basis argue that Redding's claims against them should be dismissed. I agree; in the absence of any express allegation of these defendants' involvement in the alleged deprivation of Redding's rights, Redding's right to recover against them does not rise above the level of speculation. Redding's claims should therefore be dismissed to the extent alleged against Cole and Tovar.

Second, the federal defendants note that Redding's only allegations concerning defendant Paape are as follows:

> I saw Dr. Paape the staff psychologist about my pain and the problems I was having with health services. He asked me[ ]if there was anything he could do for me[.] I asked him[ ]to talk to the Medical Department on my behalf and see if I can get some relief from this pain. I have talked to Dr. Paape on several occasion[s] about my situation. He did attempt to help me by asking his supervisor if he could prescribe me some pain medication, but his supervisor would not allow him to and consequently I am still in pain, with no medication prescribed.

Thus, Redding expressly alleges that, far from displaying deliberate indifference to Redding's medical needs, Paape affirmatively attempted to help Redding but lacked authority to do so. A trier of fact could not reasonably conclude from these allegations that Paape played any causal role in the deliberate denial or delay of Redding's medical treatment. Similarly, in the absence of any allegation that Paape took any action calculated to chill Redding's exercise of his rights under the First Amendment, Redding's First Amendment retaliation claim cannot lie against Paape. Reedding's claims should therefore be dismissed to the extent alleged against Paape.

Page 21 - FINDINGS AND RECOMMENDATION

Third, the federal defendants note that Redding's only allegations against defendant

Morris are as follows:

> This shift Lieutenant called the medical department three (3) [times] on October
> 23, 2009[,] and finally because of no response from them, she had to send an
> inmate to the medical department to get a wheel chair and transport me to the
> medical department.  Where my fall was so serious that it warrant one of the
> Medical staff to inject me with medication to relieve the pain.

As was the case with Redding's allegations against Paape, Redding's allegations against Morris

do not support the proposition that Morris displayed deliberate indifference to Redding's medical

needs, but rather suggest that Morris was moved to provide Redding with appropriate assistance

in obtaining medical services.  Also as was the case with Redding's allegations against Paape,

Redding does not allege that Morris took any action calculated to chill Redding's exercise of his

First Amendment rights.  In consequence, Redding's claims should be dismissed to the extent

alleged against Morris.

The federal defendants further argue that Redding's First Amendment claim is fatally

defectively pled, and therefore necessarily fails.  As noted above, "[w]ithin the prison context, a

viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a

state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

(5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at

567-568.  Here, Redding has alleged an exercise of his protected First Amendment rights,

namely, the filing of multiple grievances in connection with his complaints regarding the medical

treatment he received at Sheridan.  Moreover, Redding has alleged that Sheridan personnel took

adverse action against him, namely, failure to process or act on his grievances.[4]  However, review

of Redding's allegations reveals no allegation or suggestion that the failure to process or respond

to his grievances was intended to chill or did chill Redding's further exercise of his First

Amendment rights.  I therefore agree with the federal defendants that Redding's allegations do

not state a claim for First Amendment retaliation as to any defendant.  Redding's First

Amendment retaliation claim should therefore be dismissed in its entirety.

        The federal defendants further argue that Redding's Eighth Amendment claim necessarily

fails as to defendant Thomas, Sheridan's warden, and as to defendants Booth and Jacquez, each

an associate warden at Sheridan.  The federal defendants argue that, because Thomas, Booth, and

Jacquez are not medical personnel, as a matter of law they cannot be found deliberately

indifferent to a prisoner's medical needs after receiving a prisoner's complaints regarding medical

treatment so long as they reviewed the complaints and verified that the prisoner was receiving

medical treatment.  Although the Ninth Circuit has not expressly so held, the Third and Seventh

Circuits have done so.  In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Third Circuit opined

as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison
> official will generally be justified in believing that the prisoner is in capable
> hands.  This follows naturally from the division of labor within a prison.  Inmate
> health and safety is promoted by dividing responsibility for various aspects of
> inmate life among guards, administrators, physicians, and so on.  Holding a
> non-medical prison official liable in a case where a prisoner was under a
> physician's care would strain this division of labor.  Moreover, under such a
> regime, non-medical officials could even have a perverse incentive not to delegate
> treatment responsibility to the very physicians most likely to be able to help

---

        [4]  Contrary to the federal defendants' evident surmise, I see no indication in Redding's
allegations that Redding believes defendants' alleged failure to provide him with necessary
medical care was in retaliation for Redding's availment of the grievance process.

Page 23 - FINDINGS AND RECOMMENDATION

prisoners, for fear of vicarious liability.

> Accordingly, we conclude that, absent a reason to believe (or actual knowledge)
> that prison doctors or their assistants are mistreating (or not treating) a prisoner, a
> non-medical prison official . . . will not be chargeable with the Eighth
> Amendment *scienter* requirement of deliberate indifference.

*Spruill*, 372 F.3d at 236.  In *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005), the Seventh Circuit

expressly adopted the *Spruill* court's reasoning as its own.  *See Greeno*, 414 F.3d at 655-656.  I

agree with the *Spruill* and *Greeno* courts that a non-medical official cannot properly be charged

with deliberate indifference to a prisoner's medical needs if the official had reason to believe that

the prisoner was receiving medical care, and lacked reason to believe that the medical care was

being administered in a manner constituting mistreatment, and I recommend so holding here.

In consequence, I agree with the federal defendants that Redding's allegations do not state

an Eighth Amendment deliberate indifference claim against Thomas, Booth, or Jacquez.  To the

contrary, Redding's allegations suggest that each of these three defendants was at all material

times aware that Redding was receiving medical care in connection with his back pain, and

Redding makes no allegation that any of the three had grounds for believing that the care

Redding was receiving amounted to mistreatment.  I therefore recommend that Redding's Eighth

Amendment claim be dismissed to the extent alleged against Thomas, Booth, and Jacquez.

Analysis of the federal defendants' remaining arguments establishes that each is most

properly construed as offered in support of the federal defendants' motion for summary judgment.

Those arguments are therefore addressed below.

**B.     The Federal Defendants' Motion for Summary Judgment**

The federal defendants offer the declaration of defendant Keene to establish, *inter alia*,

that Keene holds the rank of Commander within the Public Health Service, in addition to serving

as a physician's assistant at Sheridan.  The federal defendants argue that, as a commissioned

officer of the Public Health Service, Keene is entitled to absolute immunity from liability for

actions taken in the scope of his duties.

> 42 U.S.C. § 233(a) provides as follows:

> The remedy against the United States provided by sections 1346 (b) and 2672 of
> title 28, or by alternative benefits provided by the United States where the
> availability of such benefits precludes a remedy under section 1346 (b) of title 28,
> for damage for personal injury, including death, resulting from the performance of
> medical, surgical, dental, or related functions, including the conduct of clinical
> studies or investigation, by any commissioned officer or employee of the Public
> Health Service while acting within the scope of his office or employment, shall be
> exclusive of any other civil action or proceeding by reason of the same
> subject-matter against the officer or employee (or his estate) whose act or
> omission gave rise to the claim.

42 U.S.C. § 233(a).  Redding offers no evidence to call into question Keene's status as an officer

of the Public Health Service, nor does he dispute the federal defendants' implicit assertion that

Keene's complained-of actions were undertaken within the scope of his office.  Because Keene

has absolute immunity from liability in connection with Redding's claims against him, the federal

defendants' motion for summary judgment should be granted as to each of Redding's claims to

the extent alleged against Keene.

The federal defendants further offer the declaration of Debra Zimmerman in support of

the propositions that Zimmerman is not a health care provider and that she lacks authority to

prescribe medication, issue medical devices, or make medical decisions.  Redding offers no

evidence to the contrary, nor does he allege or offer evidence that Zimmerman played any role in

delaying or withholding the medical care Redding hopes to obtain.  The federal defendants

likewise offer the declaration of Ignacio De Las Heras in support of the propositions that De Las Heras, despite holding a degree granted by a medical school outside the United States, is not a practicing physician within the scope of his employment at the Bureau of Prisons and lacks authority to prescribe narcotic medications.  Again, Redding does not offer evidence to the contrary, and neither alleges nor offers evidence that the alleged deprivation of his Eighth Amendment rights was caused by De Las Heras' conduct.  On the basis of Zimmerman's declaration and De Las Heras' declaration, the federal defendants argue that Redding cannot state a claim against either Zimmerman of De Las Heras for the violation of his rights under the Eighth Amendment.  I agree with the federal defendants that, on the basis of the evidence of record, a trier of fact could not reasonably conclude that Zimmerman or De Las Heras caused the alleged deprivation of Redding's Eighth Amendment rights.  The federal defendants' motion should therefore be granted as to Redding's Eighth Amendment claim to the extent alleged against Zimmerman and De Las Heras.

The federal defendants concede that defendants Davis and Dhaliwal had authority to prescribe narcotic pain medication and to make decisions regarding Redding's medical need for back surgery.[5]  The federal defendants argue that Davis and Dhaliwal nevertheless could not as a matter of law have violated Redding's Eighth Amendment rights.  In support of their argument, the federal defendants offer Davis' declaration regarding the medical treatment Redding has received at Sheridan.  Davis both declares and offers evidence that, although Redding was, as he alleges, tapered off of narcotic pain medication while at Sheridan, he nevertheless receives

_____

[5]  Although the question is not currently before the court, it appears highly likely that the federal defendants' concession would apply with equal force to defendant Westmeyer, who has made no appearance in this action although he has been served with Redding's complaint.

Page 26 - FINDINGS AND RECOMMENDATION

significant dosages of non-narcotic pain medications on a daily basis.  According to Davis'

declaration, Redding was weaned off of his narcotic prescription because such medications are

"not recommended for long term use" and because "being off narcotics would make him a better

surgical candidate."  Indeed, Davis offers into evidence medical records indicating that Buza, a

neurosurgeon whom Sheridan medical staff consulted with regarding Redding's surgery, related

"his strong preference that the patient be narcotic free when he comes to surgery," a preference

that those same medical records reflect as shared by defendant Westmeyer, "as his potential for

an excellent outcome goes up dramatically if he remains narcotic free until that time."

      Davis also offers evidence that, after Redding lost weight and improved his general

health, in December 2010 Sheridan staff approved the contemplated surgery and sought to

schedule the operation.  However, according to Davis' testimony, both Buza and a second private

neurosurgeon declined to perform the surgery, Buza (in March 2010, before Sheridan approved

the surgery) because Redding's "condition is not life-threatening and surgery is not mandatory"

and the second surgeon (in March 2011) because the condition was "not critical."  Davis declares

that Sheridan staff "continue[] to attempt to locate a new neurosurgeon willing to perform the

surgery," but offers no specificity regarding the efforts Sheridan staff are making on Redding's

behalf.  Davis further declares that "Redding has received extensive and appropriate medical care

during his incarceration" at Sheridan.

      In response, Redding offers a corpus of his medical records, including some of the same

records offered by the federal defendants as attachments to Davis' declaration.  Redding asserts,

accurately, that his records serve to establish both that some of his physicians – including

defendant Westmeyer – have opined that, contrary to the opinions of the private neurosurgeons

who refused to perform the requested surgery, surgical intervention to Redding's back is medically necessary, and that the surgery has not yet taken place. Redding's evidentiary submissions do not operate to rebut the federal defendants' position, however, as the federal defendants expressly concede Sheridan medical staff's agreement that the requested surgery is necessary, and that Redding has not yet received the surgery.

Effectively, it is Redding's position that Davis, Dhaliwal, and Westmeyer violated his rights under the Eighth Amendment both by refusing to provide him with a prescription for Oxycodone and by failing to schedule surgery on his back. As to the failure to prescribe Oxycodone, the record is replete with uncontradicted evidence that Redding has received alternative, non-narcotic pain medication, and moreover that valid medical reasons existed for refusing to prescribe the medication of Redding's choice (the fact that narcotics are not recommended for long-term usage and the fact that becoming narcotics-free was expected to, and did, make Redding a better candidate for surgery). It is well settled that a mere difference of opinion between a plaintiff and the plaintiff's medical care providers regarding choices between alternate courses of treatment is "insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see also*, *e.g.*, *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Estelle*, 429 U.S. at 107. I therefore conclude that Redding cannot state an Eighth Amendment claim on the basis of his care providers' failure to prescribe Oxycodone as opposed to non-narcotic pain medication.

As to the failure to schedule the requested surgery, by contrast, the record viewed in the light most favorable to Redding supports a deliberate indifference claim premised on delay. On December 1, 2010, one of Redding's physicians at Sheridan (defendant Westmeyer) recorded his

medical opinion regarding Redding's condition as follows:

> Very symptomatic problem of lumbar spinal stenosis with bilateral radicular symptoms, right worse [than] the left, correlating with MRI findings.  Also has thoracic stenosis but believe symptoms are coming from lumbar area.
>
> Discussed with Dr. Buza who corroborates the above.  He is planning surgery when we can schedule this.  He also relates his strong preference that the patient be narcotic free when he comes to surgery which is my preference as his potential for an excellent outcome goes up dramatically if he remains narcotic free until that time.
>
> * * *
>
> **This man has severe lumbar stenosis which is becoming more symptomatic. It is now time to fix this surgically.**  He is a large man, but obesity is not the major issue at this time.  Not reasonable to expect more weight loss, he has done absolutely everything he can to be compliant.  **Needs surgery so he can be more active and physically fit.  Will not happen until this is surgically repaired. Further delay with worsening symptoms will lead to increased morbidity, rather than to less.**

Declaration of Stephen Davis ("Davis Decl."), Exh. 3, p. 2 (emphasis supplied).  Thus, by not later than December 1, 2010, at least one of the physician defendants was aware that Redding was in need of surgery to correct his symptoms, was aware that Redding had become a good candidate for surgery, and was aware that further delay of the surgery would be expected to exacerbate Redding's symptoms and loss of functionality.  Approximately three weeks later, on December 21, 2010, Redding's request for surgery was approved.  There is no evidence of record that Buza was contacted to arrange the surgery thereafter; indeed, the only evidence that Buza expressly refused to perform the surgery dates from approximately nine months earlier, on March 30, 2010, when Buza advised Sheridan medical staff that he had discussed surgical intervention, but that Redding's condition was "not life-threatening and surgery [wa]s not mandatory," and that he would be reassessed as a surgical candidate following a CT scan.  There is no evidence of

Page 29 - FINDINGS AND RECOMMENDATION

record that such reassessment ever took place.

There is further no evidence of record that any other surgeon was contacted regarding Redding's need for surgery prior to March 16, 2011, when Redding was referred to a Dr. Sherrill. *See* Davis Decl., Exh. 7.  On March 19, 2011, Sherrill refused to schedule the surgery, stating in explanation only that "This is not critical spinal canal stenosis." *Id.*  The federal defendants offer no explanation for the delay in referring the matter to Dr. Sherrill between December 2010 and March 2011, nor do the federal defendants indicate that Redding has subsequently been referred to any other physician capable of performing the surgery.

In connection with allegations of delayed medical treatment in the Eighth Amendment context, the Ninth Circuit has opined that a prisoner may make a claim of deliberate indifference premised on "mere" delay of surgery where the prisoner can show that the delay was harmful. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992); *see also, e.g.*, *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Moreover, the prisoner is not required to show that the subsequent harm caused by the delay was "substantial" or "significant," but rather need only show that some additional harm resulted from the delay.  *See McGuckin*, 974 at 1060; *see also, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1339-1340 (9th Cir. 1990); *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  Here, Redding's evidence that he continues to experience worsening pain symptoms is sufficient to satisfy the additional harm requirement.

Without more, the evidence of delay discussed above is not sufficient to establish the physician defendants' deliberate indifference to Redding's serious medical condition as a matter of law.  However, viewed in the light most favorable to Redding, this evidence does give rise at least potentially to the inference that one or more of the physician defendants has been dilatory in

Page 30 - FINDINGS AND RECOMMENDATION

locating a surgeon willing to perform the surgical procedure that Redding's condition requires, despite actual knowledge that continued delay is contributing to increased morbidity and increased symptoms of pain.  In consequence, the federal defendants are not entitled to summary judgment on Redding's claims against defendants Davis, Dhaliwal, or Westmeyer on the proffered grounds that no violation of Redding's rights under the Eighth Amendment occurred.

The federal defendants' final argument in support of their alternative motion for summary judgment is that all federal defendants other than Keene are entitled to qualified immunity from civil liability  in connection with Redding's claims.  The Supreme Court has stated the purpose of the qualified immunity doctrine as follows:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations, internal quotation marks omitted).

The qualified immunity analysis consists of two steps.  One step analyzes whether a constitutional right was violated, while the other examines whether the right was clearly established.  Following *Pearson*, the courts are permitted to perform these steps in whichever order is more appropriate under the circumstances of the case, considering the development of the facts and legal issues in the record before the court and the stage of proceedings at which the qualified immunity issue is examined.  *See Pearson*, 555 U.S. at 236.

"The relevant, dispositive inquiry in determining whether a right is clearly established is

Page 31 - FINDINGS AND RECOMMENDATION

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Nevertheless, the Supreme Court has rejected any requirement that a plaintiff demonstrate the existence of a "fundamentally similar" or "materially similar" case in order to defeat an assertion of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Rather, there may be "notable factual distinctions between the precedents relied on . . . so long as the prior decisions give reasonable warning that the conduct then at issue violated constitutional rights." *Id.* at 740 (quotation omitted). The Supreme Court has held that the broad protections of the qualified immunity doctrine are applicable to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("if officers of reasonable competence could disagree [as to the constitutionality of the complained-of conduct], immunity should be recognized.").

Here, as discussed above, there is a question of fact as to whether a violation of Redding's constitutional rights may have occurred. In the event that Redding ultimately succeeds in establishing that his Eighth Amendment rights were violated, however, the right at issue was at all material times clearly established: purely as an illustrative example, in 1992 the *McGuckin* court expressly held that a deliberate indifference claim will stand on the basis of "mere delay of surgery" where such delay causes a degree of additional harm to the plaintiff. I therefore conclude that, if a fully developed factual record ultimately establishes that Redding's constitutional rights were violated by the delay in scheduling his surgery, the federal defendants will not be entitled to qualified immunity in connection with such violation.

III.    **Defendants Buza, Cieslik, Kissel, and Westmeyer**

    A.    **Defendants Buza, Cieslik, and Kissel**

As noted above, defendants Buza, Cieslik, and Kissel were named as defendants in Redding's amended pleading (as construed), but have not been served with process.  I recommend that Redding be ordered to show cause within a period of thirty days why his claims against Buza, Cieslik, and Kissel should not be dismissed for lack of prosecution.

    B.    **Defendant Westmeyer**

As noted above, defendant Westmeyer has been served with process in this action, but has not made any appearance.  I recommend that defendant Westmeyer be ordered to show cause within a period of thirty days why default should not be entered against him on Redding's Eighth Amendment claim.

**CONCLUSION**

For the reasons set forth above, Gardner's motion (#57) to dismiss should be granted and her motion to strike and alternative motion to make more definite and certain should be denied as moot, and the federal defendants' motion (#66) to dismiss should be granted as to Redding's claim premised on the violation of his rights under the First Amendment and 42 U.S.C. § 1997d as alleged against all defendants, and granted as to the claims alleged against defendants Cole, Tovar, Morris, Paape, Jacquez, Thomas, and Booth, and their alternative motion for summary judgment should be granted as to all claims alleged against defendant Keene and denied as to Redding's claim premised on the violation of his Eighth Amendment rights as alleged against defendants Davis, Dhaliwal, and Westmeyer.  In light of Redding's status as a litigant *pro se*, in the event Redding is able in good faith to cure the defects noted in the manner in which his First

Page 33 - FINDINGS AND RECOMMENDATION

Amendment retaliation claim in pleaded against any or all defendants, or in the manner in which

his claims are pled against defendants Cole, Tovar, Morris, Paape, Jacquez, Thomas, or Booth, I

recommend that he be granted a period of thirty days in which to amend his pleading before

judgment is entered as to the claims against those defendants.  I further recommend that Redding

be ordered to show cause within a period of thirty days why his claims against Buza, Cieslik, and

Kissel should not be dismissed for lack of prosecution, and that Westmeyer be ordered to show

cause within a period of thirty days why default should not be entered against him on Redding's

Eighth Amendment claim.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

### NOTICE

A party's failure to timely file objections to any of these findings will be considered a

waiver of that party's right to *de novo* consideration of the factual issues addressed herein and

will constitute a waiver of the party's right to review of the findings of fact in any order or

judgment entered by a district judge.  These Findings and Recommendation are not immediately

/ / /

/ / /

Page 34 - FINDINGS AND RECOMMENDATION

appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1)

of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 4th day of October, 2011.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge