IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAWRENCE CHRISTOPHER REDDING,

    Plaintiff,

        CV 10-998-PK

v.

        FINDINGS AND
        RECOMMENDATION

J. DHALIWAL, DAVIS, DE LA HERAS,
ZIMMERMAN, WESTERMEYER, JACQUEZ,
BUZA, J. C. THOMAS, COLE, and TOVAR,

    Defendants.

PAPAK, Magistrate Judge:

    Plaintiff Lawrence Christopher Redding, an incarcerated prisoner proceeding *pro se*, filed

this action *in forma pauperis* on August 20, 2010, identifying as defendants in the caption of his

complaint persons and entities identified as the United States Bureau of Prisons, Dr. J. Dhaliwal,

Dr. Davis, and Mr. De La Heras, but indicating in the body of his complaint his intention to

proceed against persons and entities identified as Dr. Dhaliwal, Dr. Davis, Mr. De La Heras, J. C.

Thomas, David Keene, Dr. Westinhimer,[1] Mr. Jacquez, Sandy Gardner, Dr. Buza, United States

Bureau of Prisons, Dr. Paape, Alan Booth, Moore, and Cieslik. As originally filed, Redding's

---

[1] The defendant Redding variously identifies as "Westinhimer" or "Westmeyer" appears
in fact to be Raymond Westermeyer, who has now made an appearance in this action.

Page 1 - FINDINGS AND RECOMMENDATION

complaint identified the causes of action on which Redding intended to proceed as arising out of defendants' violation of his rights under the Eighth and First Amendments to the United States Constitution and 42 U.S.C. § 1997(d), and recited facts in support of those claims in a separately filed document entitled "Memorandum of Law, Points and Authorities." On September 9, 2010, Redding moved for leave to amend his pleading to identify in the caption of his complaint those defendants named only in the body of the complaint and to add Debra Zimmerman as a defendant. On December 15, 2010, I granted Redding's motion, effectively construed his original pleading, his Memorandum of Law, Points and Authorities, and his motion for leave to amend as collectively constituting Redding's amended complaint, and directed the clerk of court to caption the case in accordance with Redding's intention. In addition, I dismissed Redding's claims to the extent alleged against the United States Bureau of Prisons. In consequence, I directed the clerk to issue process as to defendants Dhaliwal, Davis, De La Heras, Kissel, Zimmerman, Keene, Westermeyer, Morris, Paape, Jacquez, Gardner, Buza, Cieslik, Thomas, Booth, Cole and Tovar only, and directed that the United States Marshal's Service serve those defendants with Redding's summons, complaint, and Memorandum of Law, Points and Authorities. Service was ultimately executed as to all defendants other than those identified as Buza, Cieslik, and Kissell, who could not be located under the names and contact information Redding provided.

On October 18, 2011, Redding voluntarily dismissed his claims to the extent alleged against defendants Morris, Paape, Booth, Cieslik, and Kissel.

On December 9, 2011, Judge Hernandez dismissed each of Redding's claims with prejudice to the extent alleged against defendant Gardner, dismissed Redding's claim premised on the violation of his rights under the First Amendment and under 42 U.S.C. § 1997d without

prejudice, granted summary judgment in defendant Keene's favor as to each of Redding's claims,

granted summary judgment in favor of all defendants as to that portion of Redding's Eighth

Amendment claim premised on defendants' failure to prescribe him with narcotic pain

medication, granted summary judgment as to all defendants other than defendants Davis and

Dhaliwal as to that portion of Redding's Eighth Amendment claim premised on defendants' delay

in providing Redding with back surgery (and denied summary judgment as to that portion of

Redding's Eighth Amendment claim as to those three defendants), and gave Redding a period of

thirty days within which to file an amended complaint to state a claim premised on the violation

of his rights under the First Amendment and under 42 U.S.C. § 1997d and/or to show cause why

defendant Buza should not be dismissed as a defendant in this action for failure to prosecute.  On

December 29, 2011, Redding filed a document styled as a motion for leave to file an amended

complaint, analysis of which suggests that it is intended to constitute an amended pleading of

Redding's claim premised on the violation of his rights under the First Amendment and under 42

U.S.C. § 1997d only, and is not intended to supersede Redding's prior pleading of his Eighth

Amendment claim. On February 6, 2012, defendant Westermeyer filed an answer to Redding's

second amended complaint, making his first appearance in this action.

Now before the court are Redding's fifth motion (#144) for appointment of counsel,

Redding's motion (#151) for entry of default judgment against defendants Dhaliwal, Davis, De

La Heras, Zimmerman, Jacquez, Buza, Thomas, Cole, and Tovar, and defendants Dhaliwal,

Davis, De La Heras, Zimmerman, Jacquez, Thomas, Cole, and Tovar's motion (#152) to dismiss.

I have considered the motions and all of the papers and pleadings on file.  For the reasons set

forth below, Redding's fifth motion for appointment of counsel should be denied, Redding's

motion for entry of default judgment should be denied, and defendants Dhaliwal, Davis, De La

Heras, Zimmerman, Jacquez, Thomas, Cole, and Tovar's motion to dismiss should be granted

with prejudice as to Redding's Eighth Amendment claim to the extent Redding seeks injunctive

relief by and through that claim only, and otherwise denied.

## FACTUAL BACKGROUND

I.      **The Allegations of Redding's Constructive First Amended Complaint**[2]

In or around January 2007, Redding injured his back when he slipped and fell on a sheet

of ice while incarcerated.  At or around that time, he was advised by two different neurologists

that he would need back surgery to repair the injury he had suffered.  Following the accident, he

was placed on "a series of pain managements," apparently including daily consumption of

Percocet.

In February 2009, Redding was assaulted by fellow inmates at the Terre Haute Federal

Correctional Institution, suffering injuries that exacerbated the pain symptoms caused by his back

injury.  Shortly thereafter, Redding was prescribed a more powerful pain medication, Oxycodone,

apparently both because his pain symptoms were more acute and because the Percocet had begun

to aggravate Redding's pre-existing Hepatitis C symptoms.  Redding was apparently advised by

the prescribing physician that he would continue to take Oxycodone until after he underwent

back surgery.

In July 2009, apparently out of concern for Redding's safety were he to remain housed at

the institution in Terre Haute, Redding was transferred to the Sheridan Federal Correctional

---

[2]   Except where otherwise indicated, the following recitation constitutes the court's
construal of the allegations contained in Redding's (constructive) first amended pleading,
assuming the truth of all allegations of fact.

Institution. At Sheridan, Redding explained to a physician's assistant (not a party to this action) that he needed back surgery, that he was still experiencing pain symptoms, that Oxycodone controlled his pain symptoms but that he was beginning to habituate to the prescribed dosage. The physician's assistant advised Redding that he was unable to prescribe a higher dosage, and that Redding would need to consult with a physician if he wanted to change his medication. Redding attempted to see a physician on August 27, 2009, but was seen by physician's assistant Cieslik instead. She advised him that she, also, was unable to prescribe medication.

On September 2, 2009, Redding filed an informal BP-8 grievance regarding the refusal of Sheridan medical staff to increase his Oxycodone dosage. Booth, an Associate Warden at Sheridan, assisted Redding in preparing the grievance. Medical staff responded by asserting that Redding was receiving an appropriate level of pain medication. Redding responded by filing a formal BP-9 grievance. It appears that Redding has to date received no response to his formal grievance, except that in late September 2009 the administration requested additional time to process his request. Shortly after Redding received the request for additional time, a staff physician, defendant Dhaliwal, terminated Redding's Oxycodone prescription without prior notice to Redding, prescribing Indomethacin in its stead. Dhaliwal later told Redding that he does not like prescribing Oxycodone for extended periods of time.

In October 2009, medical staff took Redding's wheelchair from him, apparently against his preferences, on the grounds that he no longer needed it, and that he needed to strengthen his back by walking before he could be scheduled to undergo back surgery. It appears that Redding subsequently fell down, further aggravating his injuries. Morris, a shift lieutenant, called the medical department three times and, having received no response, ultimately sent an inmate to

Page 5 - FINDINGS AND RECOMMENDATION

fetch a wheelchair to transport Redding back to sick bay. Redding grieved the removal of his wheelchair, first informally and then formally, without receiving any response. Redding also met with defendant Jacquez, Sheridan's Associate Warden, to request assistance, but Jacquez proved unhelpful.

In December 2009, Redding met with defendant Davis, a physician and the regional Clinical Director for Bureau of Prisons facilities. Redding requested a prescription for Oxycodone, but Davis refused, prescribing instead Gabapentin.

In January 2010, Dhaliwal directed Sheridan's food services division to begin preparing Redding's meals without any tomato or citrus products. Apparently the Cook Supervisor (not a party to this action) initially refused to prepare a meal for Redding according to Dhaliwal's specifications, with the result that Redding was forced to fast for approximately 24 hours. During the period of Redding's fast, Redding complained to physician's assistant Keene about food services' failure to comply with Dhaliwal's directive, and Keene promised that the problem would be taken care of. Redding characterizes Keene's promise as "empty."

In February 2010, Redding informally grieved the failure to adhere to the directed dietary restrictions. In response, Redding was directed (by defendant Jacquez and by Thomas, Sheridan's Warden) to apply to defendant Davis for assistance. It appears that Redding was unable thereafter to obtain an appointment to meet with Davis.

Redding met with Paape, a staff psychologist, in February 2010. Redding requested an Oxycodone prescription, but was informed that Paape was not authorized to prescribe medication. Redding also met with defendant Gardner, a staff technologist, at around that same time. Gardner told Redding that he should be receiving pain medication, and told him she would

Page 6 - FINDINGS AND RECOMMENDATION

send a note to the neurosurgeon to see if anything could be done, apparently without result.

On more than one occasion between October 2009 and February 2010, Redding spoke with De La Heras, a Health Service Administrator at Sheridan, regarding his back pain and Hepatitis-related symptoms. Redding alleges that De La Heras provided him with shots of pain medication to relieve his pain symptoms. On one of those occasions, Zimmerman, a medical records supervisor, was present. On that occasion, Redding was asked "in an intimidating fashion" to "sign off" on his wheelchair grievance.

In June 2010, Redding met with defendant Westermeyer, a physician providing services at Sheridan on an independent contractor basis. Redding asked for a renewed Oxycodone prescription, but Westermeyer refused the request, on the grounds that Redding did not need the medication.

At some unspecified time, Redding asked Kissell, a Sheridan medical staff phlebotomist, for pain medication, but she replied that she was unable to do anything for him other than to draw blood for physician-prescribed tests.

Redding has not yet undergone back surgery, and continues to experience worsening pain symptoms. Redding alleges defendants' liability, in both their official and their individual capacities, for violation of his rights under the Eighth Amendment and under the First Amendment and 42 U.S.C. § 1997d.

## II.   The Allegations of Redding's Filing of December 29, 2011

As noted above, on December 29, 2011, Redding filed a document styled as a motion for leave to file an amended complaint, but which analysis suggests is intended as an amended statement of Redding's allegations in support of his First Amendment and/or U.S.C. § 1997d

retaliation claim, filed in response to Judge Hernandez' order granting Redding a period of thirty days within which to file an amended pleading for the purpose of restating his allegations in support of that claim. By and through his filing of December 29, 2011, Redding alleges the following.

On September 2, 2009, Redding filed an informal BP-8 grievance requesting that his pain medications be increased. The request was denied. On September 19, 2009, Redding filed a formal BP-9 grievance regarding the same issue. On October 13, 2009, the administration requested additional time to respond to the grievance. Two days later, on October 15, 2009, defendant Dhaliwal, a prison physician, reduced Redding's pain medications. Redding takes the position that Dhaliwal did so for the purpose of chilling Redding's First Amendment right to file grievances. Substantially these same facts were alleged in Redding's constructive first amended complaint.

On October 23, 2009, prison medical staff took back the wheelchair Redding had been using for transportation over "long distances." Redding filed an informal BP-8 grievance regarding the incident on November 8, 2009. Apparently following denial of the informal grievance, Redding filed a formal BP-9 grievance regarding the same incident on an unspecified date. On December 10, 2009, the administration requested additional time to respond to the grievance. Apparently following denial of the formal grievance, Redding filed a BP-10 administrative appeal with the Western Regional Office of the Bureau of Prisons regarding the same incident. Having received no response to his appeal, on July 10, 2011, Redding filed a BP-11 administrative appeal which was returned to him without processing. On September 6, 2010, Redding filed an additional informal BP-8 grievance regarding the incident. Some time

Page 8 - FINDINGS AND RECOMMENDATION

thereafter, Redding was placed in a Special Housing Unit, apparently by defendant Tovar. Although Redding alleges that he was placed in the Special Housing Unit "for sitting in [his] wheelchair" (he does not explain the inconsistency between his allegation that the wheelchair was taken away and his allegation that he was subsequently punished for using it), he takes the further position that Tovar did so for the purpose of chilling his exercise of his First Amendment right to file grievances. Redding alleged some of these same facts in his constructive first amended complaint, but did not previously allege that Tovar placed him in the Special Housing Unit in retaliation for Redding's exercise of his First Amendment rights.

On January 28, 2010, Dhaliwa ordered that Redding be fed a diet without tomato or citrus products. The mess hall refused to comply with Dhaliwal's order. On February 8, 2010, Redding filed an informal BP-8 grievance regarding the failure to provide him the special diet ordered by Dhaliwal. Defendant Jacquez, in response to the grievance, advised Redding that resolution of his grievance would not be possible until defendant Davis was available to discuss the situation with Redding. Redding takes the position that Jacquez refused to act on the grievance for the purpose of chilling Redding's exercise of his First Amendment right to file grievances. Substantially these same facts were alleged in Redding's constructive first amended complaint.

On January 12, 2011, Jacquez placed Redding in a two-man cell with two other men. Redding was housed in that cell under those conditions for approximately six months. Redding takes the position that he was placed in a crowded cell for the purpose of chilling his exercise of his First Amendment rights. These facts were not alleged in Redding's constructive first amended complaint.

ANALYSIS

**I.      Construction of Redding's Claims; Absence of Claims Alleged Against Defendants De La Heras, Zimmerman, Thomas, Cole, Westermeyer, and Buza**

Because at the time Judge Hernandez granted Redding leave to amend his pleading for the purpose of restating his allegations in support of his First Amendment and/or U.S.C. § 1997d retaliation claim Redding had a pending Eighth Amendment claim against defendants Davis and Dhaliwal, and because Redding has given no indication that he intends to abandon that claim, I recommend that the court construe Redding's filing of December 29, 2011, as a restatement of Redding's allegation in support of his First Amendment and/or U.S.C. § 1997d retaliation claim only, and not as superseding his prior pleading in its entirety. I therefore further recommend that the court construe Redding's original pleading and Memorandum of Law, Points and Authorities filed August 20, 2010, his motion for leave to amend filed September 9, 2010, and his filing of December 29, 2011, as collectively constituting Redding's second amended complaint, except that to the extent allegations contained in the filing of December 29, 2011, contravene allegations contained in the earlier-filed documents, the allegations contained in the filing of December 29, 2011, should be construed as superseding the conflicting earlier allegations.

So construed, Redding currently has pending an Eighth Amendment claim against defendants Davis and Dhaliwal, and a claim for First Amendment retaliation against defendants Dhaliwal, Tovar, and Jacquez. To the extent Redding's constructive pleading purports to state a claim against any other named defendant, such claim has already been dismissed by Judge Hernandez' order dated December 9, 2011, and is no longer at issue in this action. In consequence, I recommend that the court dismiss De La Heras, Zimmerman, Thomas, Cole,

Westermeyer, and Buza[3] from this action.

## II.    Redding's Fifth Motion (#144) for Appointment of Counsel

As noted in my orders dated August 27, 2010, and September 1, 2011, there is generally

no constitutional right to counsel in a civil case.  *See United States v. 30.64 Acres of Land*, 795

F.2d 796, 801 (9th Cir. 1986).  Moreover, while the federal courts have discretion pursuant to 28

U.S.C. § 1915(e) to request volunteer counsel for indigent plaintiffs in "exceptional

circumstances," such circumstances have not been established here.  Redding's fifth motion for

appointment of counsel, like the four similar motions that preceded it, is not supported by any

allegations or evidence that Redding's action presents exceptional circumstances of any kind.

Redding's fifth motion for appointment of counsel should therefore be denied.

## III.    Redding's Motion (#151) for Entry of Default Judgment

On February 16, 2012, Redding moved for entry of default judgment against all

defendants other than Westermeyer, on the grounds that no defendant other than Westermeyer

had either answered or moved for or an extension of the time in which to answer the document

Redding filed on December 29, 2011, to serve as a portion of his amended pleading.  While

Redding is correct that when a party files an amended pleading stating claims against an

opposing party, the opposing party must either answer the amended pleading or move to dismiss

it under Federal Civil Procedure Rule 12 within 14 days after the date the amended pleading is

---

[3] In addition, on December 9, 2011, Judge Hernandez ordered Redding to show cause why his caims against Buza should not be dismissed for failure to prosecute.  Redding responded to that portion of Judge Hernandez' order, but nowhere in Redding's response does he address his failure to effect service on Buza (the "failure to prosecute" recited in Judge Hernandez' order).  Redding's failure to address the issue raised in Judge Hernandez order to show cause provides an alternative reason for dismissing Buza from this action.

Page 11 - FINDINGS AND RECOMMENDATION

served on the opposing party, *see* Fed. R. Civ. P. 15(a)(3), and that as of February 16, 2012, more than 21 days had passed since Redding filed the document that I now recommend be construed as constituting a portion of Redding's second amended complaint, entry of default would be inappropriate here. First, all defendants have made appearances in this action. Second, Redding's filing of December 29, 2011, was not styled as an amended pleading, but rather as a motion for leave to amend his pleading, creating a degree of potential uncertainty as to whether the court would deem Redding to have amended his pleading effective December 29, 2012, or would first grant the requested leave.

Third, Local Civil Procedure Rule 15-1(c) provides in relevant part that "[a]n amended or supplemental pleading must reproduce the entire pleading and may not incorporate any part of the prior pleading by reference," L.R. 15-1(c), and as noted above analysis of Redding's filing of December 29, 2011, strongly suggests that Redding intended the filing to amend only a portion, and not the entirety, of his constructive first amended complaint. Although Redding's failure to comply strictly with applicable Federal and Local Civil Procedure Rules has been appropriately tolerated over the course of these proceedings, in acknowledgment of Redding's status as an incarcerated, *pro se* plaintiff, his failure to provide defendants with one single pleading clearly stating all of Redding's allegations in support of his claims provides good grounds for forgiveness of defendants' failure to treat Redding's filing as an amended pleading requiring an answer within 14 days of service of the document.

Finally, defendants Dhaliwal, Davis, De La Heras, Zimmerman, Jacquez, Thomas, Cole, and Tovar responded to Redding's filing of December 29, 2011, by moving to dismiss it on February 28, 2012. In light of the procedural uncertainties under which these defendants were

presumptively operating, I recommend that the court deem these defendants' motion to dismiss

timely filed, and deny Redding's motion for entry of default judgment.

IV.    **Defendants Dhaliwal, Davis, Tovar, Jacquez, De La Heras, Zimmerman, Thomas, and Cole's Motion (#152) to Dismiss for Failure to State a Claim**

A.    **Legal Standard Applicable to Motion to Dismiss for Failure to State a Claim**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the

speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright

& A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R.

Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any

merely conclusory recitation that the elements of a claim have been satisfied, that "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to

survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

*United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained

in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to

Page 13 - FINDINGS AND RECOMMENDATION

dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### B.    Discussion of Motion to Dismiss for Failure to State a Claim

Defendants Dhaliwal, Davis, Tovar, Jacquez, De La Heras, Zimmerman, Thomas, and Cole (collectively, the "Sheridan defendants") move to dismiss Redding's prayer for injunctive relief in connection with his Eighth Amendment claim and to dismiss Redding's First Amendment retaliation claim in its entirety. The Sheridan defendants do not move for dismissal of Redding's Eighth Amendment to the extent that Redding seeks money damages in connection with that claim.

#### 1.    Motion to Dismiss Redding's Prayer for Injunctive Relief in Connection with his Eighth Amendment Claim

I take judicial notice that Redding has changed his address of record in this action to reflect his transfer from Sheridan to the United States Medical Center for Federal Prisoners, located in Springfield, Missouri. *See* Docket No. 145. In consequence, no current or prior defendant in this action is in a position to control or influence the health care Redding will receive at his new institution.

By and through his Eighth Amendment claim, Redding seeks injunctive relief (i) to

Page 14 - FINDINGS AND RECOMMENDATION

require Sheridan medical staff to schedule the back surgery Redding believes his condition

requires, (ii) to provide Redding with a prescription for 20 mg doses of Oxycodone twice daily

both before his surgery and afterwards, until Redding is pain-free, (iii) to enjoin defendants from

transferring Redding to any different facility until after he recovers from the requested surgery,

and (iv) to require Sheridan staff to retain all viderecordings in their possession showing the

hardship, pain, and suffering that Redding has experienced while housed at Sheridan.  Because

no defendant is in a position of authority to effect any of the first three enumerated requested

injunctions, the first three requests for injunctive relief are now moot.  Moreover, I find that the

fourth enumerated requested injunction is likewise moot, as not being a fit matter for injunctive

relief:  there could be no grounds for granting a permanent injunction to retain such records, as

Redding has no grounds to compel retention of such records following the close of this litigation,

and during the pendency of this litigation no such injunction is needed, as the Sheridan

defendants' counsel is already laboring under an ethical duty to preserve (and to refrain from

spoliating) all evidence of potential relevance to Redding's claims.

     I therefore recommend that the court dismiss Redding's prayer for injunctive relief in its

entirety, as moot.  Redding's Eighth Amendment claim for money damages should not be

disturbed by such disposition.

### 2.    Motion to Dismiss Redding's First Amendment Retaliation Claim

     Redding has consistently pled and argued his retaliation claim as violative of his rights

under both the First Amendment and 42 U.S.C. § 1997d.  As a preliminary matter, the Sheridan

defendants note correctly that there is no private right of action under Section 1997d, although

the Civil Rights for Institutionalized Persons Act, codified at 42 U.S.C. §§ 1997-1997j,

Page 15 - FINDINGS AND RECOMMENDATION

authorizes the United States Attorney General to bring civil actions against institutions violating

the rights of incarcerated persons, including (under Section 1997d) for retaliating against

incarcerated persons for reporting such violations.  *See McRorie v. Shimoda*, 795 F.2d 780, 782,

n.3 (9th Cir. 1986); *see also* 42 U.S.C. § 1997d.  I therefore agree with the Sheridan defendants

that Redding's retaliation claim is properly construed as a First Amendment retaliation claim.

With regard to First Amendment retaliation, the Ninth Circuit has opined that:

> Of fundamental import to prisoners are their First Amendment rights to file prison
> grievances. . . and to "pursue civil rights litigation in the courts.  Without those
> bedrock constitutional guarantees, inmates would be left with no viable
> mechanism to remedy prison injustices.  And because purely retaliatory actions
> taken against a prisoner for having exercised those rights necessarily undermine
> those protections, such actions violate the Constitution quite apart from any
> underlying misconduct they are designed to shield.

*Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citations, internal quotation marks and

modifications, and footnotes omitted).  "Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal."  *Id.* at 567-568 (footnote omitted),

*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), *Barnett v. Centoni*, 31 F.3d 813,

815-16 (9th Cir. 1994).

Although there is no express statutory cause of action available to private citizens

subjected to so-called "constitutional torts" by federal employees or others acting under the color

of federal law, the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971) recognized an implied cause of action for money

Page 16 - FINDINGS AND RECOMMENDATION

damages under the Fourth Amendment for an injury caused by a federal agent acting under color

of federal authority. *See Bivens*, 403 U.S. at 389. Since *Bivens*, the federal courts have

recognized similar implied causes of action in connection with a broad range of constitutional

torts, including the violation of an incarcerated prisoner's rights under the Eighth Amendment,

*see Carlson v. Green*, 446 U.S. 14, 20 (1980), and the violation of rights under the First

Amendment, *see Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986). Redding brings

his First Amendment claim against the defendants in their individual capacities on a *Bivens*

theory.

On October 4, 2011, I recommended that this court dismiss Redding's First Amendment

retaliation claim without prejudice on the grounds that Redding had failed to allege that

defendants' various adverse actions against him were intended to chill his exercise of his first

amendment rights or that those adverse actions actually did chill Redding's exercise of his First

Amendment rights. On December 9, 2011, Judge Hernandez adopted that recommendation, and

dismissed the First Amendment retaliation claim on those specified grounds. In addition, Judge

Hernandez adopted my recommendation that Redding be granted a period of thirty days within

which to amend his allegations in support of his First Amendment retaliation claim and, as set

forth above, Redding has now restated those allegations.

Redding's newly-filed allegations in support of his retaliation claim are sufficient to cure

the defects identified by Judge Hernandez. As to each adverse action complained of in Redding's

supplemental pleading of December 29, 2011, Redding now alleges that the action was intended

to chill his exercise of his First Amendment right to file grievances, that the action caused him

some degree of harm, and that the action lacked any legitimate penological purpose. Under

*Rhodes, supra,* these allegations are sufficient to permit Redding's First Amendment retaliation claim to survive the Sheridan defendants' motion to dismiss.

It is well established that a First Amendment retaliation plaintiff need not allege that his exercise of his First Amendment rights be actually silenced, nor even inhibited or suppressed, but rather only to have suffered adverse actions that "would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012), *quoting Rhodes,* 408 F.3d at 568; see also *Rhodes,* 408 F.3d at 568 ("[s]peech can be chilled even when not completely silenced"). Moreover, where a First Amendment retaliation plaintiff alleges that a government official's adverse action caused the plaintiff to suffer more than *de minimis* harm, such harm is presumed (at the pleading stage of a First Amendment retaliation action) to have had the requisite chilling effect. *See, e.g., Watison,* 668 F.3d at 1114, *citing Rhodes,* 408 F.3d at 568, n. 11, *Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009). Indeed, the Ninth Circuit has suggested that a plaintiff may state a claim for First Amendment retaliation merely by alleging that a government official took actions *intended* to chill the plaintiff's exercise of First Amendment rights. *See Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1300 (9th Cir. 1999). Here, in addition to alleging that each complained-of adverse action he suffered was intended to chill his exercise of his right to file grievances, Redding has alleged that at least one of the adverse actions caused him to suffer harm: specifically, Redding has alleged that Dhaliwal arbitrarily prescribed Redding less effective pain medication in retaliation for Redding's grievance of September 19, 2009, causing Redding to suffer pain unnecessarily and without penological justification.

I cannot conclude as a matter of law that a person of "ordinary firmness" would not have

Page 18 - FINDINGS AND RECOMMENDATION

been chilled by the adverse actions Redding complains of in his constructive second amended complaint. Whether such a person would have been chilled by the treatment Redding allegedly suffered is a matter for resolution at a later stage of these proceedings, either at summary judgment or at trial. The Sheridan defendants' motion should be denied as to Redding's First Amendment retaliation claim.

## CONCLUSION

For the reasons set forth above, Redding's fifth motion (#144) for appointment of counsel should be denied, Redding's motion (#151) for entry of default judgment should be denied, and defendants Dhaliwal, Davis, De La Heras, Zimmerman, Jacquez, Thomas, Cole, and Tovar's motion (#152) to dismiss should be granted as to Redding's Eighth Amendment claim to the extent Redding seeks injunctive relief by and through that claim only, and otherwise denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or

Page 19 - FINDINGS AND RECOMMENDATION

judgment entered by a district judge. These Findings and Recommendation are not immediately

appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1)

of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.


Dated this 15th day of May, 2012.

Honorable Paul Papak
United States Magistrate Judge


Page 20 - FINDINGS AND RECOMMENDATION