IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAWRENCE CHRISTOPHER REDDING,

        Plaintiff,

                                  CV 10-998-PK

v.                                    FINDINGS AND
                                    RECOMMENDATION

J. DHALIWAL, DAVIS, JACQUEZ, and TOVAR,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Lawrence Christopher Redding, an incarcerated prisoner proceeding *pro se*, filed

this action *in forma pauperis* on August 20, 2010. Following significant motion practice, over

the course of which Redding amended his pleading twice, the court liberally construed the

allegations of Redding's first and second amended pleadings, and the court dismissed certain of

Redding's pled and/or construed claims in whole or in part. On May 15, 2012, I recommended

that the court dismiss Redding's remaining claims pursuant to Federal Civil Procedure Rule

12(b)(6) for failure to state a claim, other than the following: (i) one claim alleged against

defendants identified as Dhaliwal and Davis arising out of those defendants' alleged violation of

Redding's rights under the Eighth Amendment to the United States Constitution, premised on

Page 1 - FINDINGS AND RECOMMENDATION

those defendants' alleged role in causing undue delay in scheduling medically necessary surgery

to Redding's back, and (ii) one claim alleged against defendants identified as Dhaliwal, Tovar,

and Jacquez, arising out of those defendants' alleged violation of Redding's rights under the First

Amendment, premised on Dhaliwal's decision to reduce Redding's prescription for narcotic pain

medication, allegedly in retaliation for certain of Redding's filed grievances, on Tovar's conduct

in placing Redding in a Special Housing Unit, allegedly in retaliation for a grievance Redding

filed regarding the confiscation of his wheelchair, on Jacquez' failure to process one of Redding's

grievances, allegedly in retaliation for Redding's exercise of his right to file grievances, and on

Jacquez' role in placing Redding in a two-man cell with two other men for a period of

approximately six months, allegedly in retaliation for Redding's exercise of his right to file

grievances. On June 25, 2012, Judge Hernandez adopted my recommendation in part, dismissing

all of Redding's claims other than those described above, but in addition dismissing Redding's

First Amendment retaliation claim to the extent premised on Jacquez' role in placing Redding in

a two-man cell with two other men for a period of approximately six months.

Now before the court are Redding's motion (#161) for summary judgment and Redding's

constructive motion (#183) for reconsideration of the court's order dismissing his First

Amendment retaliation claim to the extent premised on Jacquez' role in placing Redding in a

two-man cell with two other men. I have considered the motions and all of the papers and

pleadings on file. For the reasons set forth below, Redding's constructive motion (#183) for

reconsideration and motion (#161) for summary judgment should each be denied.[1]

---

[1] In the course of the analysis of Redding's constructive motion for summary judgment
set forth below, as to each of Redding's claims I find that Redding has failed to meet his burden
to establish the absence of any unresolved question of material fact as to whether he is entitled to

## LEGAL STANDARDS

### I.    Motion for Reconsideration

An order that resolves fewer than all of the claims among all of the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). Where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." *United States v. Martin*, 226 F.3d 1042, 1048-1049 (9th Cir. 2000). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986). Generally, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County, Oregon v. ACANDS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### II.    Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

judgment as a matter of law. These findings should not be interpreted to suggest that Redding cannot ultimately prevail on any or all of his claims, but only that he has not met his burden to establish entitlement to judgment as a matter of law for purposes of his constructive motion for summary judgment. These findings likewise should not be interpreted to suggest that the defendants are foreclosed from filing a motion for summary judgment as to any or all of Redding's claims, or that the unresolved questions of material fact I identify below on the current evidentiary record and under the current procedural posture would necessarily prevent entry of summary judgment in whole or in part for the defense.

Page 3 - FINDINGS AND RECOMMENDATION

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## MATERIAL FACTUAL BACKGROUND[2]

In or around January 2007, Redding injured his back when he slipped and fell on a sheet of ice while incarcerated. At or around that time, he was advised by two different neurologists that he would need back surgery to repair the injury he had suffered. Following the accident, he was provided with narcotic pain medication, including Percocet. Redding did not undergo surgery on his back until July 2012, some time after this litigation was initiated.

In February 2009, Redding was assaulted by fellow inmates at the Terre Haute Federal Correctional Institution, suffering injuries that exacerbated the pain symptoms caused by his back injury. Shortly thereafter, Redding was prescribed a more powerful pain medication, Oxycodone, apparently both because his pain symptoms were more acute and because the Percocet had begun to aggravate Redding's pre-existing Hepatitis C symptoms. Redding may have been advised by the prescribing Terre Haute physician that he would continue to take Oxycodone until after he

---

[2]    Except where otherwise indicated, the following recitation constitutes the court's construal of the allegations contained in Redding's (constructive) second amended pleading, assuming the truth of all allegations of fact.

underwent back surgery.

In July 2009, apparently out of concern for Redding's safety were he to remain housed at the institution in Terre Haute, Redding was transferred to the Sheridan Federal Correctional Institution. At Sheridan, Redding explained to a physician's assistant (not a party to this action) that he needed back surgery, that he was still experiencing pain symptoms, and that Oxycodone controlled his pain symptoms, but that he was beginning to habituate to the prescribed dosage. The physician's assistant advised Redding that he was unable to prescribe a higher dosage, and that Redding would need to consult with a physician if he wanted to change his medication. Redding attempted to see a physician on August 27, 2009, but was seen by physician's assistant Cieslik, a former defendant in this action, instead. She advised him that she, also, was unable to prescribe medication.

On September 2, 2009, Redding filed an informal BP-8 grievance requesting that his pain medications be increased. The request was denied. On September 19, 2009, Redding filed a formal BP-9 grievance regarding the same issue. On October 13, 2009, the administration requested additional time to respond to the grievance. Two days later, on October 15, 2009, defendant Dhaliwal, a prison physician, reduced Redding's pain medications. Although Redding takes the position that Dhaliwal did so for the purpose of chilling Redding's First Amendment right to file grievances, defendants offer Dhaliwal's sworn testimony that, at the time he took the complained-of action, he was unaware of Redding's grievances, and that all decisions he made relating to Redding's medical care and pain management regimen were based on his clinical judgment as to how best to meet Redding's medical needs.

On October 23, 2009, prison medical staff took back the wheelchair Redding had been

using for transportation over "long distances." Redding filed an informal BP-8 grievance regarding the incident on November 8, 2009. Apparently following denial of the informal grievance, Redding filed a formal BP-9 grievance regarding the same incident on an unspecified date. On December 10, 2009, the administration requested additional time to respond to the grievance. Apparently following denial of the formal grievance, Redding filed a BP-10 administrative appeal with the Western Regional Office of the Bureau of Prisons regarding the same incident. Having received no response to his appeal, on July 10, 2011, Redding filed a BP-11 administrative appeal which was returned to him without processing. On September 6, 2010, Redding filed an additional informal BP-8 grievance regarding the incident. In or around this time, Redding was placed in a Special Housing Unit, allegedly by defendant Tovar. Although Redding takes the position that Tovar took this action, and did so for the purpose of chilling Redding's exercise of his First Amendment right to file grievances, defendants offer into evidence an Administrative Detention Order dated August 27, 2010, indicating that the order to place Redding in the SHU was issued by a Lieutenant R. Reed, and not by defendant Tovar. In addition, defendants offer Tovar's sworn testimony that at the time Redding was placed in the SHU she had no knowledge of Redding's filed grievances, and that at all material times she lacked authority to order an inmate's detention in the SHU.

On January 28, 2010, Dhaliwal ordered that Redding be fed a diet without tomato or citrus products. The mess hall refused to comply with Dhaliwal's order. On February 8, 2010, Redding allegedly filed an informal BP-8 grievance regarding the failure to provide him the special diet ordered by Dhaliwal. Defendant Jacquez allegedly advised Redding that resolution of his grievance would not be possible until defendant Davis was available to discuss the

Page 6 - FINDINGS AND RECOMMENDATION

situation with Redding.  Although Redding takes the position that Jacquez refused to act on the

grievance for the purpose of chilling Redding's exercise of his First Amendment right to file

grievances, defendants offer Jacquez' sworn testimony that he has not made any effort to chill

Redding's exercise of his First Amendment rights, that he has no recollection of the complained-

of incident, and that he has not been able to locate any record of Redding's alleged informal

grievance regarding the failure of Food Services to provide Redding with a compliant diet.  For

his part, Redding offers into evidence a copy of an "Informal Resolution" dated February 8, 2010,

by and through which Sheridan counselor C. Simmons advised Redding that his informal

grievance could not be resolved in his favor due to Redding's failure to follow the "correct

procedure" for obtaining approval of a special diet ordered by a medical professional.  Simmons'

advice indicates that Jacquez' ultimate approval was required before Sheridan Food Services

would provide an inmate with a special diet.

On January 12, 2011, Jacquez allegedly made the decision to place Redding in a two-man

cell with two other men.  Redding was housed in that cell under those conditions for

approximately six months.  Redding takes the position that he was placed in a crowded cell for

the purpose of chilling his exercise of his First Amendment rights.[3]

---

[3] In support of his constructive motion for summary judgment, in addition to the
foregoing Redding offers into evidence a page from a response to one of his grievances signed on
March 23, 2011, by Harrell Watts, a Bureau of Prisons administrator apparently charged with
addressing inmate appeals at the national level.  While the remainder of the response is not
provided, the provided portion indicates that the response issued in connection with a grievance
regarding the failure to schedule Redding's back surgery.  By and through the response, Watts
advised Redding, *inter alia*, that "The surgery has been delayed as you initiated legal action
against FCI Sheridan. . . ."  Although Redding has not pled that any defendant took action
calculated to chill Redding's exercise of his right to prosecute this action, so that the document is
not clearly material to any of Redding's claims, I find it troubling that the government may have
suggested to Redding that the obstacles to scheduling his surgery promptly could be linked in any

Page 7 - FINDINGS AND RECOMMENDATION

## ANALYSIS

### I.    Redding's Constructive Motion (#183) for Reconsideration

As noted above, by and through his order of June 25, 2012, Judge Hernandez dismissed Redding's First Amendment retaliation claim to the extent premised on Jacquez' role in placing Redding in a two-man cell with two other men in January 2011. Judge Hernandez dismissed the claim to the extent so premised on the basis of an Incident Report dated January 12, 2011, indicating that Jacquez was not a member of the Unit Discipline Committee which issued the order to move Redding out of preferred housing for a period of six months. Because the Incident Report of January 12, 2011, was attached as an exhibit to Redding's (constructive) second amended complaint, it was appropriate for Judge Hernandez to consider the Incident Report as evidence. *See, e.g., Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Redding now argues that Jacquez was nevertheless involved in the disciplinary action that resulted in the transfer to an overcrowded cell, asserting that Jacquez instructed staff to issue the incident report underlying the disciplinary transfer. Redding further asserts that he has in his possession a document establishing the accuracy of his characterization of the facts. Redding does not, however, offer that document into evidence, and it was not attached as an exhibit to any of his actual or constructive pleadings. In the absence of any evidence in support of Redding's motion, no grounds exist for concluding that the court's initial decision was in any way erroneous or manifestly unjust. Moreover, Redding does not argue that there has been any material intervening change in the governing law, or that the court should modify its decision based on any newly discovered evidence. In consequence, Redding's constructive motion for

---

degree with his decision to file a lawsuit against the defendants.

reconsideration should be denied.

II.    **Redding's Constructive Motion (#161) for Summary Judgment**

Redding alleges defendants Dhaliwal's and Davis' liability for the violation of his rights under the Eighth and First Amendments to the United States Constitution.  Redding's claim premised on the violation of his rights under the Eighth Amendment arises out of the purported failure of these Sheridan medical staff members to provide Redding with necessary medical care, specifically failure to perform a specified surgical procedure on Redding's back.  The Supreme Court has established that a public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must establish both (i) that he suffered an objectively serious illness or injury while incarcerated and (ii) that prison officials were subjectively aware of the seriousness of the condition and deliberately denied or delayed access to medical care that could reasonably have been provided.  *See Clement v. Gomez*, 298 F.3d 898, 904-905 (9th Cir. 2002). The objective component is satisfied "whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 904 (internal quotation marks omitted), *citing McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *quoting Estelle*, 429 U.S. at 104)).

Redding's claim premised on the violation of his rights under the First Amendment arises out of defendants Dhaliwal's, Tovar's, and Jacquez' actions, set forth above, taken in alleged retaliation for Redding's exercise of his First Amendment rights and with the intent to chill Redding's further exercise of those rights.  The Ninth Circuit has opined that:

> Of fundamental import to prisoners are their First Amendment rights to file prison
> grievances. . . and to "pursue civil rights litigation in the courts.  Without those
> bedrock constitutional guarantees, inmates would be left with no viable
> mechanism to remedy prison injustices.  And because purely retaliatory actions
> taken against a prisoner for having exercised those rights necessarily undermine
> those protections, such actions violate the Constitution quite apart from any
> underlying misconduct they are designed to shield.

*Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citations, internal quotation marks and

modifications, and footnotes omitted).  "Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal." *Id.* at 567-568 (footnote omitted),

*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), *Barnett v. Centoni*, 31 F.3d 813,

815-16 (9th Cir. 1994).

 Although there is no express statutory cause of action available to private citizens

subjected to so-called "constitutional torts" by federal employees or others acting under the color

of federal law, the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971) recognized an implied cause of action for money

damages under the Fourth Amendment for an injury caused by a federal agent acting under color

of federal authority. *See Bivens*, 403 U.S. at 389.  Since *Bivens*, the federal courts have

recognized similar implied causes of action in connection with a broad range of constitutional

torts, including the violation of an incarcerated prisoner's rights under the Eighth Amendment,

*see Carlson v. Green*, 446 U.S. 14, 20 (1980), and the violation of rights under the First

Amendment, *see Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986).

A.    **Redding's Eighth Amendment Claim**

To the extent Redding seeks summary adjudication of his Eighth Amendment claim,

defendants offer in opposition the sworn declaration of Patricia Charles, a Health Services

Assistant employed by the Bureau of Prisons at Sheridan.  Charles testifies that Sheridan medical

staff made extensive efforts between December 2010 and March 2011 to locate a neurosurgeon

both qualified and willing to perform surgery on Redding's back.  Charles further testifies that

these efforts appeared successful in March 2011, but that after the identified neurosurgeon

examined Redding he advised Sheridan medical staff that he was unwilling to perform the

surgery because it would be unnecessary.  Charles further testifies that, during the same time

period when these efforts were taking place, Sheridan medical staff provided Redding with

"extensive care and attention."

I agree with defendants that Charles' testimony is sufficient to create a question of

material fact as to whether the delay in scheduling Redding's surgery was deliberate.  A finder of

fact could reasonably infer from Charles' testimony that Sheridan had no medical professional on

staff who was qualified to perform the necessary surgical procedure, with the consequence that it

was necessary to identify a civilian neurosurgeon qualified and willing to perform the surgery

before the procedure could be performed.  Furthermore, a finder of fact could reasonably

conclude on the basis of Charles' testimony that Sheridan made reasonable efforts to identify

such a neurosurgeon from December 2010 until one was ultimately identified some time after

this litigation was initiated.

In consequence of the unresolved question of material fact as to whether the delay in

scheduling Redding's surgery was deliberate, Redding has not met his burden to establish that he

Page 11 - FINDINGS AND RECOMMENDATION

is entitled to judgment as a matter of law on his Eighth Amendment claim. I therefore recommend that Redding's constructive motion for summary judgment be denied as to Redding's *Bivens* claim premised on the violation of his rights under the Eighth Amendment.

**B.      Redding's First Amendment Retaliation Claim**

As noted above, Redding's First Amendment retaliation claim, as currently before the court, is premised on actions taken by defendants Dhaliwal, Tovar, and Jacquez. Specifically, the First Amendment retaliation claim is premised on Dhaliwal's decision of October 15, 2009, to reduce Redding's pain medications, on Tovar's alleged placement of Redding into a Special Housing Unit in or around August 2010, and on Jacquez' alleged failure to process Redding's informal grievance of February 2010 regarding Sheridan Food Services' failure to provide Redding with a medically ordered special diet.

**1.      Dhaliwal's Allegedly Retaliatory Conduct**

On October 15, 2009, Dhaliwal ordered that Redding begin tapering down the dosage of narcotic pain medication that he was receiving. According to Dhaliwal's sworn testimony, he did so following an examination at which Redding did not appear to be in pain, and did not appear to be in compliance with his prescribed diet and exercise regimens. Dhaliwal testified that he made the decision to taper Redding's pain medications because of their "long-term harmful and addictive effects," because he believed Redding's pain could be controlled with non-narcotic medications, and because he believed an approach emphasizing back-strengthening and weight loss would be more beneficial to Redding than an approach relying on narcotic medications. Dhaliwal further testifies that he and other Sheridan health care providers subsequently followed up with Redding and determined that the tapering approach was working, and that Redding still

Page 12 - FINDINGS AND RECOMMENDATION

did not appear to be in pain.

Dhaliwal additionally testifies that he was unaware of Redding's filed grievances at the time he made the decision to reduce Redding's pain medications, and that he never took any action with the intent to chill the exercise of Redding's First Amendment rights.

I agree with defendants that Dhaliwal's testimony is sufficient to create a question of material fact both as to whether Dhaliwal's decision to reduce Redding's pain medications was taken "because of" Redding's grievances and as to whether Dhaliwal's decision lacked any "legitimate correctional goal." A finder of fact could reasonably conclude on the basis of Dhaliwal's testimony that Dhaliwal was unaware of Redding's grievances at the time he reduced Redding's pain medication prescriptions, and therefore could not have done so in retaliation for Redding's grievances. Moreover, a finder of fact could reasonably conclude on the basis of Dhaliwal's testimony that the reduction in Redding's pain medication was motivated by a desire to provide Redding with appropriate long-term medical treatment.

In consequence of these unresolved questions of material fact, Redding has not met his burden to establish that he is entitled to judgment as a matter of law on his First Amendment retaliation claim to the extent premised on Dhaliwal's actions. I therefore recommend that Redding's constructive motion for summary judgment be denied as to Redding's *Bivens* claim premised on Dhaliwal's alleged violation of his rights under the First Amendment.

## 2. Tovar's Allegedly Retaliatory Conduct

Redding alleges that, in or around August 2010, he was placed in a Special Housing Unit (a disciplinary action) by defendant Tovar, in retaliation for his exercise of his right to file inmate grievances. However, Tovar's sworn testimony is that at the time Redding was placed in the

SHU, she was unaware of his filed grievances, that she was not involved in the decision to place Redding in SHU, and that she lacked authority to order an inmate to be placed in the SHU. Moreover, documentary evidence appears to establish that the order to place Redding in the SHU on August 27, 2010, was signed by a Lieutenant R. Reed.

I agree with defendants that Tovar's testimony is sufficient to create at least a question of material fact as to whether Tovar had any involvement in the decision to place Redding in the SHU. A finder of fact could reasonably conclude on the basis of Tovar's testimony and documentary evidence that Tovar did not take any action against Redding calculated to chill his exercise of his First Amendment rights. In consequence, Redding has not met his burden to establish that he is entitled to judgment as a matter of law on his First Amendment retaliation claim to the extent premised on Tovar's alleged actions. I therefore recommend that Redding's constructive motion for summary judgment be denied as to Redding's *Bivens* claim premised on Tovar's alleged violation of his rights under the First Amendment.

### 3.    Jacquez' Allegedly Retaliatory Conduct

According to Redding's allegations, in January 2010 defendant Dhaliwal ordered that he be placed on a special diet for medical reasons, but Food Services refused to comply with the medical order. Redding alleges that he filed an informal grievance regarding the failure of Food Services to comply with Dhaliwal's order, and that defendant Jacquez deliberately failed to process the grievance for the purpose of chilling Redding's exercise of his First Amendment rights.

Defendants offer Jacquez' sworn testimony that he does not have any recollection of any such informal grievance, and that his search of Sheridan records failed to uncover documentary

Page 14 - FINDINGS AND RECOMMENDATION

evidence that any such grievance had ever been filed. In addition, Jacquez testifies that he never took any action with the intent to chill Redding's exercise of his First Amendment rights.

In support of his motion for summary judgment, Redding offers into evidence, *inter alia*, an "Informal Resolution" dated February 8, 2010, signed by Sheridan counselor C. Simmons. The Informal Resolution indicates that Redding's informal grievance of unspecified date could not be resolved in Redding's favor due to his failure to follow required procedures for communicating medically ordered dietary regimens to Sheridan Food Services. Simmons advised Redding through the Informal Resolution that Jacquez' ultimate approval was required before Sheridan Food Services would provide an inmate with a special diet.

Although I find Jacquez' sworn testimony to be disingenuous in light of Redding's evidentiary proffer, and although I note that despite Jacquez' protestations it appears that Redding did file the informal grievance that Jacquez claims he was unable to locate, I nevertheless agree with defendants that Jacquez' testimony is sufficient to create a question of fact as to whether Jacquez deliberately failed to process any grievance filed by Redding with the intention to chill his exercise of his First Amendment rights. The Informal Resolution offered into evidence by Redding indicates that an informal grievance Redding filed regarding the failure of Food Services to provide Redding with compliant meals was in fact fully processed, and that Redding received a final response to the grievance. While the response does not specify the procedures Redding was required to follow in order to achieve his desired result, it suggests that Redding had been verbally advised of the correct procedures by Food Services staff. There is no evidence of record to suggest that Redding filed any further grievance regarding this issue, or any non-speculative grounds for concluding that Jacquez took any action against Redding motivated by

Page 15 - FINDINGS AND RECOMMENDATION

retaliatory animus.

Because there is an unresolved question of material fact as to whether Jacquez took any action with the intent to chill Redding's exercise of his First Amendment rights, Redding has not met his burden to establish that he is entitled to judgment as a matter of law on his First Amendment retaliation claim to the extent premised on Jacquez' alleged conduct. I therefore recommend that Redding's constructive motion for summary judgment be denied as to Redding's *Bivens* claim premised on Jacquez' alleged violation of his rights under the First Amendment.

## CONCLUSION

For the reasons set forth above, Redding's constructive motion (#161) for summary judgment and constructive motion (#183) for reconsideration should each be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately

Page 16 - FINDINGS AND RECOMMENDATION

appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1)

of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.


Dated this 21st day of November, 2012.

Honorable Paul Papak
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION